UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL    'O'    JS-6

| Case No. | 5:18-cv-01798-CAS-SHKx | Date | March 26, 2019 |
|---|---|---|---|
| Title | SAINT-GOBAIN CERAMICS & PLASTICS, INC. VS. II-VI INC. ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:                    Attorneys Present for Defendants:

Not Present                                                    Not Present

**Proceedings:**      (IN CHAMBERS) - DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (Dkt. 36, filed October 1, 2018)

## I.      INTRODUCTION

On August 24, 2018, plaintiff Saint-Gobain Ceramics and Plastics, Inc. ("Saint-Gobain") filed suit against defendants II-VI Inc. and II-VI Optical Systems, Inc. (collectively "II-VI" or "defendants"). Dkt. 1 ("Compl."). The complaint alleges three counts of patent infringement, in violation of 35 U.S.C. § 271, which arise out of defendants' alleged manufacturing and sale of single crystal sapphire sheets. Id. at ¶¶ 9–10. These sheets are used, for example, in the manufacture of windows for aircrafts. Id. Plaintiff filed a motion for preliminary injunction regarding the alleged patent infringement on the same day. Dkt. 7.

On October 1, 2018, defendants filed a motion to dismiss the complaint. Dkt. 36 ("MTD"). Defendants argued that plaintiff's case should be dismissed, pursuant to 28 U.S.C. § 1498, because defendants manufactured and sold the allegedly infringing sapphire sheets exclusively for the U.S. Government. Id. at 3. On October 10, 2018, defendants also filed an application to stay plaintiff's motion for a preliminary injunction, pending the Court's determination of defendants' motion to dismiss. Dkt. 55. Plaintiff filed an opposition to defendants' motion to dismiss on October 15, 2019. Dkt. 60 ("OTD"). Defendants filed a reply on October 22, 2019. Dkt. 74 ("RTD").

On October 16, 2018, the parties jointly filed a stipulation to continue the hearing on plaintiff's motion for a preliminary injunction to December 3, 2018. Dkt 63. The Court granted the stipulation on October 18, 2018. Dkt. 69.

**CIVIL MINUTES – GENERAL**    **'O'**    **JS-6**

| Case No. | 5:18-cv-01798-CAS-SHKx | Date | March 26, 2019 |
|---|---|---|---|
| Title | SAINT-GOBAIN CERAMICS & PLASTICS, INC. VS. II-VI INC. ET AL. | | |

On October 31, 2018, the Court converted defendants' motion to dismiss into a motion for summary judgment. Dkt. 91 (citing <u>Toxgon Corp. v. BNFL, Inc.</u>, 312 F.3d 1379, 1382 (Fed. Cir. 2002) ("If appropriate, a defense arising under section 1498(a) should be resolved by summary judgment under Rule 56 rather than a motion to dismiss under Rule 12.")). The Court further directed the parties to conduct discovery and submit supplemental briefing on the applicability of § 1498 in this matter.

On November 15, 2018, the Court issued an order on the parties' joint stipulation for a temporary restraining order ("TRO"), enjoining defendants from producing sapphire single crystal sheets wherein the width is not less than 28 cm, and the thickness is not less than about 0.5 cm, in the United States. Dkt. 96 ("Stip. TRO") ¶ 1. However, the stipulated TRO does not enjoin activities permitted under § 1498. <u>Id.</u>  The parties agree that the stipulated TRO will remain in place until the Court decides defendants' request to dismiss the case. <u>Id.</u> ¶ 2. The stipulation further provides that, if the Court does not dismiss the case in its entirety under § 1498, the hearing on the preliminary injunction will be reset, as will a schedule for discovery, and briefing for plaintiff's motion for a preliminary injunction. <u>Id.</u>  In that event, the TRO will also remain in place until the Court rules on plaintiff's motion for a preliminary injunction. <u>Id.</u>

On February 19, 2019, defendants filed their supplemental briefing on the motion for summary judgment, dkt. 113 ("MSJ"), along with a statement of uncontroverted facts and conclusions of law, dkt. 114 ("SUF"), and supporting documents and declarations. Plaintiff filed its supplemental briefing on February 25, 2019, dkt. 121 ("OSJ"), along with a statement of disputed facts and conclusions of law, dkt. 121-2 ("DSUF"), and supporting documents and declarations.  With leave of Court, defendants filed a reply to plaintiff's briefing on March 1, 2019.  Dkt. 128 ("RSJ").

The Court held a hearing on March 4, 2019.  The motion for summary judgment is now before the Court.  Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.    BACKGROUND

The following facts are not meaningfully disputed and are set forth for purposes of background.  Unless otherwise noted, the court references only facts that are uncontroverted and as to which evidentiary objections have been overruled.

**CIVIL MINUTES – GENERAL**   **'O'**   **JS-6**

| Case No. | 5:18-cv-01798-CAS-SHKx | Date | March 26, 2019 |
|---|---|---|---|
| Title | SAINT-GOBAIN CERAMICS & PLASTICS, INC. VS. II-VI INC. ET AL. | | |

### A.    Plaintiff's Allegations

### i.    The Production of Sapphire Sheets and Plaintiff's Patents

Plaintiff Saint-Gobain Ceramics & Plastics, Inc. ("Saint-Gobain") is part of the Saint-Gobain Group, one of the world's largest makers of industrial and construction materials. Compl. ¶ 2. Plaintiff is a Delaware corporation with its principal place of business in Pennsylvania. Id. ¶ 12. Plaintiff produces ceramic materials, including industrial crystals, grains and powders, refractories, and engineered ceramic components. Id. ¶ 1. These products and components are produced for and sold in various industrial markets, including oil and gas extraction, defense and military, and the aeronautical and aerospace industries. Id.

One specific product that plaintiff produces is single crystal sapphire sheets. Plaintiff explains that sapphire is the "material of choice for engineers faced with design challenges of extreme conditions—such as those found in high-temperature, high-pressure, or harsh chemical and physical environments." Id. ¶ 7. Sapphire is chemically inert, rendering it durable and capable of withstanding harsh chemicals. Id. It is also relatively unique in its ability to transmit ultraviolent, visible, and infrared light, as well as microwaves. Id. Manufacturers "grow" single sapphire crystal sheets by drawing molten material through a die in a crucible. Id. ¶ 18.

In this action, plaintiff asserts three patents, obtained from the United States Patent and Trademark Office, that relate to the production of single crystal sapphire sheets. Id. ¶ 7. First, plaintiff asserts United States Patent No. RE43,469 (the "'469 Patent"), a patent with apparatus claims titled "Single crystals and methods for fabricating same." Id. ¶ 4; see Compl, Ex. A. Plaintiff alleges that the '469 Patent covers a single crystal sapphire sheet that is wider and thicker than sheets that were produced by prior methods. Id. ¶ 18. Specifically, the '469 Patent purports to address issues caused by non-uniform temperatures (a "thermal gradient") across molten, sapphire material. Id. Second, plaintiff asserts United States Patent No. 9,926,645 (the "'645 Patent"), titled "Method of forming a single crystal sheet using a die having a thermal gradient along its length." Id. ¶ 5; see Compl. Ex. B. Finally, plaintiff asserts United States Patent No. 9,963,800 (the "'800 Patent"), titled "Method of making a sapphire component including machining a sapphire single crystal." Compl. ¶ 6; see Compl., Ex. C. The '645 Patent and the '800 Patent claim methods for forming sapphire components from sapphire crystals. Compl. ¶

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          'O'    JS-6

| Case No. | 5:18-cv-01798-CAS-SHKx | Date | March 26, 2019 |
| Title | SAINT-GOBAIN CERAMICS & PLASTICS, INC. VS. II-VI INC. ET AL. |

19.  These three patents are collectively referred to as the "Sapphire Patents," and plaintiff alleges that together, these patents "claim sapphire single crystal sheets that are larger than could be successfully manufactured before Saint-Gobain's invention as well as methods of making and finishing the sheets." Id. ¶ 7.

Plaintiff produces large, sapphire, single crystal sheets that are used for "an extraordinarily demanding window application," required by Lockheed Martin ("Lockheed") for installment in the F-35 Joint Strike Fighter, a fighter jet that Lockheed manufactures for the United States Government, pursuant to a U.S. Government Prime Contract. DSF ¶ 1.[1] Lockheed allegedly purchases the sapphire sheets to be used in the window application for many tens of thousands of dollars per sheet. Compl. ¶ 8. Plaintiff alleges that in 2004 – 2005, it was the sole supplier of large sapphire single crystal sheets for Lockheed. Id. ¶ 20.

### ii.    Plaintiff Alleges that Defendants Infringe Plaintiff's Sapphire Patents

Defendant II-VI Inc. is a Pennsylvania corporation with its principal place of business in Pennsylvania. Id. ¶ 12. Defendant II-VI Optical Systems, Inc. is a wholly owned subsidiary of II-VI Inc.  It is a California corporation with its principal place of business in California. Id. ¶ 13. II-VI Inc. and II-VI- Optical Systems are collectively referred to as "II-VI" or "defendants."

Defendants participate in the supply chain for the sapphire window application that Lockheed purchases, though their role has evolved over the years.  Initially, the parties represent that defendants crafted the window applications that were inserted into the F-35 Fighters after receiving the raw-material, single crystal sapphire sheets that plaintiff grew and sold to Lockheed.  However, in 2015, defendants purchased one or more sapphire furnaces in order to produce their own sapphire single crystal sheets. Id. ¶ 20. Thereafter, defendants excluded plaintiff from the supply chain because defendants began producing sapphire single crystal sheets and then "machin[ing] them into windows by grinding, lapping, polishing and/or removing bulk material from them"— without purchasing the raw materials from plaintiff. Id.  Defendants admit that they "purchased

---

[1]     Plaintiff did not initially specify the customer for the sapphire windows, but the parties now confirm that the customer is Lockheed.

**CIVIL MINUTES – GENERAL**      **'O'**   **JS-6**

| Case No. | 5:18-cv-01798-CAS-SHKx | Date | March 26, 2019 |
|----------|------------------------|------|----------------|
| Title | SAINT-GOBAIN CERAMICS & PLASTICS, INC. VS. II-VI INC. ET AL. | | |

the furnace to replace [plaintiff] as the supplier of the raw materials." RTD at 7. Defendants also sell these window applications to Lockheed. DSUF ¶ 1.

Accordingly, plaintiff alleges that "II-VI now competes directly with Saint-Gobain, supplying sapphire single sheets to [Lockheed] and thereby diverting sales to itself that Saint-Gobain would otherwise have made." Compl. ¶ 9. Importantly, plaintiff also alleges that by producing the raw-material, single crystal sapphire sheets, defendants infringe certain claims of plaintiff's Sapphire Patents. Plaintiff now alleges three counts of patent infringement, in violation of 35 U.S.C. §§ 271. Plaintiff requests damages in accordance with 35 U.S.C. § 284, 285, as well as injunctive relief.[2]

### B.     Defendant's Assertion of a 28 U.S.C. § 1498 Affirmative Defense

While defendants admit that they produce sapphire sheets, defendants "vigorously den[y]" that they infringe any claims of plaintiff's patents. MTD at 3, n.4. Notwithstanding this fact, defendants further argue that, even if they were infringing claims of the Sapphire Patents, the Court should dismiss this case pursuant to 28 U.S.C. § 1498. MTD at 3; MSJ at 1. Pursuant to § 1498,

> Whenever an invention described in and covered by a patent of the United States is used or manufactured by or for the United States without license of the owner thereof or lawful right to use or manufacture the same, the owner's remedy shall be by action against the United States in the United States Court of Federal Claims for the recovery of his reasonable and entire compensation for such use and manufacture.

28 U.S.C.A. § 1498(a) (West). Accordingly, where a defendant's "use of the accused [patent] was both 'for the Government' and 'with the authorization and consent of the Government,' [defendant] is entitled to immunity from suit under § 1498(a)." Sevenson Envtl. Servs., Inc. v. Shaw Envtl., Inc., 477 F.3d 1361, 1367 (Fed. Cir. 2007). Defendants therefore move for summary judgment under § 1498 on the grounds that all

---

[2]     Plaintiff allegedly notified defendants of their alleged infringement of the '469 Patent and '645 Patent on December 7, 2015 and April 26, 2018, respectively. Compl. ¶ 21. Plaintiff alleges that it learned of defendants' alleged infringement of the '800 Patent when it was issued, on or around May 8, 2018. Id. ¶ 22.

**CIVIL MINUTES – GENERAL**    **'O'**   JS-6

| Case No. | 5:18-cv-01798-CAS-SHKx | Date | March 26, 2019 |
|----------|------------------------|------|----------------|
| Title | SAINT-GOBAIN CERAMICS & PLASTICS, INC. VS. II-VI INC. ET AL. |

of their accused products are sold to Lockheed pursuant to government contracts that include the government's authorization and consent to infringe one or more claims of the Sapphire Patents. Plaintiff opposes defendants' motion. Plaintiff contends that defendants have not carried its burden of proving that all of their accused activities were "for the government" and with the "authorization and consent" of the government.

## III. LEGAL STANDARDS

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631, n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

**CIVIL MINUTES – GENERAL**      **'O'   JS-6**

| Case No. | 5:18-cv-01798-CAS-SHKx | Date | March 26, 2019 |
|----------|------------------------|------|----------------|
| Title | SAINT-GOBAIN CERAMICS & PLASTICS, INC. VS. II-VI INC. ET AL. |

## IV.   DISCUSSION

The sole question before the Court is whether, pursuant to 28 U.S.C. § 1498, the Court should dismiss this case. Section 1498 is an affirmative defense, not a jurisdictional bar. <u>Manville Sales Corp. v. Paramount Sys., Inc.</u>, 917 F.2d 544, 554 (Fed. Cir. 1990). Section 1498 "relieves a third party from patent infringement liability, and it acts as a waiver of sovereign immunity and consent to liability by the United States." <u>Madey v. Duke Univ.</u>, 307 F.3d 1351, 1359 (Fed. Cir. 2002). A section 1498 affirmative defense is a highly factual determination, whereby a defendant must establish that "(1) the [infringing] use is 'for the Government'; and (2) the [infringing] use is 'with the authorization and consent of the Government.'" <u>Sevenson</u>, 477 F.3d at 1365. "The burden is initially upon the movant to establish the absence of any genuine issue of material fact and entitlement to judgment as a matter of law." <u>Crater Corp. v. Lucent Techs.</u>, 255 F.3d 1361, 1366 (Fed. Cir. 2001) (citing <u>Celotex</u>, 477 U.S. at 323–34).

The parties agree that defendants are subcontractors, engaged by Lockheed to produce the accused sapphire windows. SUF ¶ 1. Additionally, the parties agree that every accused window panel that Lockheed has purchased was purchased under Lockheed's Prime Contracts with the U.S. Government, and ultimately sold to the U.S. Government. SUF ¶¶ 1–2, 5.[3] The parties do not dispute that defendants make no sale of accused sapphire windows to any customer other than Lockheed. <u>Id.</u> ¶ 11. The parties also do not dispute that every Prime Contract between Lockheed and the U.S. Government includes the government's "authorization and consent" clause from Federal Acquisitions Regulation ("FAR") 52.227-1. <u>Id.</u> ¶ 4. Similarly, the parties agree that the Requirements and Pricing Agreements, as well as the Purchase Orders, executed by Lockheed and defendants incorporate, by reference, the FAR 52.227-1 "authorization and consent." <u>Id.</u> ¶¶ 7–8. FAR 52.227-1 provides that,

---

[3]     Plaintiff disputes in part the fact that Lockheed sells the F-35 fighter jets exclusively to the United States government. Plaintiff explains that Lockheed manufactures some of these jets for "foreign governments that participate in the Joint Strike Fighter program and 'foreign military sales' customers.'" DSUF ¶ 2. However, plaintiff concedes that, "[s]uch sales are indirect to the foreign governments through the U.S. Government." <u>Id.</u> ¶¶ 2 – 3. The Government's eventual resale does not controvert the fact that Lockheed sells the sapphire window applications to the U.S. Government.

**CIVIL MINUTES – GENERAL**          **'O'**   **JS-6**

| Case No. | 5:18-cv-01798-CAS-SHKx | | Date | March 26, 2019 |
|---|---|---|---|---|
| Title | SAINT-GOBAIN CERAMICS & PLASTICS, INC. VS. II-VI INC. ET AL. | | | |

The Government authorizes and consents to all use and manufacture, in performing this contract or any subcontract at any tier, *of any invention described in and covered by a United States patent—*

> (1) Embodied in the structure or composition of any article the delivery of which is accepted by the Government under this contract; or

> (2) Used in machinery, tools, or methods whose use necessarily results from compliance by the Contractor or a subcontractor with (i) specifications or written provisions forming a part of this contract or (ii) specific written instructions given by the Contracting Officer directing the manner of performance.

48 C.F.R. § 52.227-1 (West) (emphasis added). Where certain conditions are met, FAR 52.227-1 accordingly permits contractors and subcontractors to infringe claimed inventions covered by a United States patent. Id.

By submitting numerous declarations, along with excerpts of their contracts and purchase orders with Lockheed, defendants contend that they have established that all of their accused uses were "for the Government" with the "authorization and consent of the Government." Plaintiff disagrees for three reasons. Notwithstanding the fact that defendants sell the sapphire window applications exclusively to Lockheed, for use in U.S. fighter jets, plaintiff first argues that defendants fail to demonstrate that these sales were made with the authorization and consent of the government. OSJ at 3–8. Next, plaintiff contends that, before defendants sold sapphire window applications to Lockheed, defendants first researched and developed a process to produce sapphire single crystal sheets. Plaintiff argues § 1498 does not limit liability for these initial research and development activities. Id. at 9–13. Finally, plaintiff argues that defendants produced sapphire sheets for marketing purposes, and that these infringing activities similarly fall outside the protection § 1498. Id. at 13–15. The Court considers each of these allegations in turn.

### A.   Whether Defendant's Accused Sapphire Sheets were Produced with the "Authorization and Consent" of the Government

Plaintiff argues that defendants did not receive the authorization and consent of the government when they manufactured the single crystal sapphire sheets that they

**CIVIL MINUTES – GENERAL**     **'O'**     **JS-6**

| Case No. | 5:18-cv-01798-CAS-SHKx | Date | March 26, 2019 |
|---|---|---|---|
| Title | SAINT-GOBAIN CERAMICS & PLASTICS, INC. VS. II-VI INC. ET AL. |

sold to Lockheed in the form of window applications for the F-35 Fighter Jets. OSJ at 3. Under § 1498, the "authorization and consent" of the government may be express or implied. Golden v. United States, 137 Fed. Cl. 155, 175 (Fed. Cl. 2018); TVI Energy Corp. v. Blane, 806 F.2d 1057, 1060 (Fed. Cir. 1986) ("In proper circumstances, Government authorization can be implied."). "When the Government provides express consent, that consent may be very broad, extending to any patented invention and any infringing use, or may be limited to only certain patented inventions or to only those uses that are necessary or are specifically consented to by the Government." Madey v. Duke Univ., 413 F. Supp. 2d 601, 608 (M.D.N.C. 2006) (citing Carrier Corp. v. United States, 534 F.2d 244, 249 (Ct. Cl. 1976)). "Where, as here, a government contract contains an explicit authorization and consent clause (and the parties have alleged no alternative source for government authorization and consent), the scope of the government's authorization and consent to liability naturally hinges on the language of that clause." Sevenson, 477 F.3d at 1366–67.

Defendants argue that the government provided authorization and consent to defendants' production of sapphire sheets because FAR 52.227-1 is included in every relevant contract in this case. MSJ at 8. Plaintiff concedes that every Prime Contract between Lockheed and the U.S. Government contained FAR 52.227-1, and that the purchase orders entered into by Lockheed and defendants incorporated this provision. SUF ¶¶ 4, 7–8. Still, plaintiff argues that defendants have not demonstrated that the government "authorized and consented" to defendants' allegedly infringing conduct because defendants have not established that their infringing uses "necessarily result[] from compliance by the Contractor or a subcontractor with (i) specifications or written provisions forming a part of this contract or (ii) specific written instructions given by the Contracting Officer directing the manner of performance." OSJ at 4 (citing 48 C.F.R. § 52.227-1 (2) (West)).

FAR 52.227-1 contains two clauses that specify the circumstances in which the government is held to have "authorized and consented" to a party's patent infringement. The parties disagree over which provision of FAR 52.227-1 applies in this case. Under the first clause, the government authorizes and consents to infringing patents "embodied in the structure or composition of any article the *delivery of which is accepted* by the Government under this contract." 48 C.F.R. § 52.227-1(1) (West) (emphasis added). Defendants contend that this first clause applies in this case because this case involves supply contracts. MSJ at 13; RSJ at 3 (citing Carrier, 534 F.2d at 247 n.5 ("The portion

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**    **'O'**    **JS-6**

| Case No. | 5:18-cv-01798-CAS-SHKx | Date | March 26, 2019 |
|----------|------------------------|------|----------------|
| Title | SAINT-GOBAIN CERAMICS & PLASTICS, INC. VS. II-VI INC. ET AL. | | |

of the authorization and consent clause that provides that the Government authorizes and consents to infringement of any patent 'embodied in the structure or composition of any article the delivery of which is accepted by the Government' is *applicable to hardware and other goods* procured by and delivered to the Government for its own use, *generally through supply contracts*.")).  In light of the government's acceptance of the sapphire windows, defendants therefore argue that the government authorized and consented to defendants' alleged patent infringement.

At oral argument, plaintiff agreed that the first clause of FAR 52.227-1 applies to plaintiff's '469 Patent, the patent with apparatus claims that plaintiff asserts in this case. However, with regard to the two patents with method claims that plaintiff asserts, plaintiff contends that the second clause of FAR 52.227-1 applies.  OSJ at 4.  Under the second clause, authorization and consent is only provided for patent infringement when it is "[u]sed in machinery, tools, or *methods* whose use *necessarily results from compliance* by the Contractor or a subcontractor with (i) *specifications or written provisions* forming a part of this contract or (ii) *specific written instructions* given by the Contracting Officer directing the manner of performance."  Id. § 52.227-1(2) (West) (emphasis added).  Plaintiff argues that the plain language of the regulation demonstrates that clause 2 applies to the method patent claims, and it relies on Hughes Aircraft Co. v. United States, 29 Fed. Cl. 197 (1993), in support of its position.  OSJ at 5.  In Hughes, the Federal Court of Claims concluded that, "[a]s the language suggests, clause (i) addresses apparatus patents, and clause (ii) addresses method patents."  29 Fed. Cl. at 222.  Plaintiff argues that this second clause is not satisfied in this case because defendants neither demonstrate that infringement of plaintiff's method patent claims was necessary, nor that defendants followed written specifications by Lockheed or the government, which obligated defendants to infringe the '645 Patent and '800 Patent claims.  Id. at 8.

As is clear, the rules established in Hughes and Carrier contradict one another in this case, where the government has contracted for goods that defendants allegedly manufactured in violation of method patent claims.  Carrier indicates that Clause 1 applies because the contract at issue is a supply contract.  534 F.2d at 247 n.5.  In contrast, Hughes suggests that Clause 2 applies to the method patent claims at issue in this case.  29 Fed. Cl. at 222.  The Court finds that the record does not indicate that defendants employed plaintiff's claimed methods pursuant to specific governmental instructions.  Accordingly, the Court must determine the appropriate clause of FAR § 52.227-1 to apply in this case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL    'O'   JS-6

| Case No. | 5:18-cv-01798-CAS-SHKx | Date | March 26, 2019 |
| --- | --- | --- | --- |
| Title | SAINT-GOBAIN CERAMICS & PLASTICS, INC. VS. II-VI INC. ET AL. | | |

### i.   Case Law Regarding the Appropriate Test for Choosing Between Clauses 1 and 2 of FAR § 52.227-1

The weight of authority support's defendants' position that clause 1 of FAR § 52.227-1 applies in this case because the contract at issue is a supply contract. Carrier, 534 F.2d 244 (Ct. Cl. 1976), best supports this position. In Carrier, the plaintiff alleged that the defendant had infringed its apparatus patent claims. Id. Despite this fact, the Carrier court applied the second clause, explaining that, "[t]he portion of the authorization and consent clause that provides that the Government authorizes and consents to infringement of any patent 'embodied in the structure or composition of any article the delivery of which is accepted by the Government' is *applicable to hardware and other goods* procured by and delivered to the Government for its own use, *generally through supply contracts*." Id. at 247 n.5 (emphasis added). Since the contract at issue in Carrier was a contract for services, the Court accordingly explained that "the quoted portion of the clause [was] clearly inapposite." Id. Accordingly, Carrier applied the second clause. See id. at 247.[4] As defendants underscore, the Carrier court found that the second clause applied notwithstanding the fact that the asserted patent included apparatus claims. RSJ at 3.

Since Carrier, other courts have also employed this goods-versus-services test to determine the applicable FAR 52.227-1 clause. In TDM Am., LLC v. United States, 83 Fed. Cl. 780 (2008), a case that involved both apparatus and method patent claims, the parties and the court agreed that the second FAR 52.227-1 clause applied because a contract for services was at issue. Id. at 784, 785 n.4 ("FAR ¶ 52.227–1(a)(1) also limits liability to 'any article the delivery of which is accepted by the Government.' Defendant maintains that this provision does not apply to the present case because the contracts pertained to the performance of services and not the delivery of articles. Plaintiff does not contest this argument."). In Sevenson, the Federal Circuit also applied the second clause of FAR 52.227-1 where a services contract was at issue. Sevenson, 477 F.3d at 1367. Although only method patent claims were at issue in Sevenson, and although the Sevenson court did not explain why it applied the second clause, defendants still

---

[4]    The Court observes that Carrier does not expressly indicate that it is interpreting FAR 52.227-1. However, the authorization and consent language in Carrier mirrors the language in FAR 52.227-1. Carrier, 534 F.2d at 247.

**CIVIL MINUTES – GENERAL**       **'O'    JS-6**

| Case No. | 5:18-cv-01798-CAS-SHKx | Date | March 26, 2019 |
|----------|------------------------|------|----------------|
| Title | SAINT-GOBAIN CERAMICS & PLASTICS, INC. VS. II-VI INC. ET AL. | | |

emphasize the importance of this case. RSJ at 3. Defendants further note that the Federal Circuit in <u>Sevenson</u> referred to <u>Carrier</u> as "on-point, binding precedent." <u>Id.</u> (quoting <u>Sevenson</u>, 477 F.3d at 1367). As defendants indicate, the Federal Circuit incorporated the holdings of its predecessor courts—the United States Court of Claims and the United States Court of Customs and Patent Appeals—after Congress created the Federal Circuit in 1982. <u>See</u> <u>S. Corp. v. United States</u>, 690 F.2d 1368, 1370 (Fed. Cir. 1982).

Plaintiff relies on <u>Hughes Aircraft Co. v. United States</u>, 29 Fed. Cl. 197 (1993), in support of its position. There, the Federal Court of Claims concluded that, "[a]s the language suggests, clause (i) addresses apparatus patents, and clause (ii) addresses method patents." <u>Id.</u> at 222. Applying the logic in <u>Hughes</u>, plaintiff emphasizes that, "[t]he plain reading of FAR 52.227-1 is that Clause 2, not Clause 1, governs method claims. Clause 1 is directed to patented inventions that are 'embodied in the structure or composition' of government articles, not to methods or processes. Clause 2, by contrast, is expressly directed to patented methods." OSJ at 4. However, the Court is aware of no case that relies on <u>Hughes</u> for this proposition. Importantly, too, while <u>Hughes</u> was decided in 1993, <u>TDM</u>— the most recent Federal Court of Claims case to address this issue—postdated <u>Hughes</u>. The <u>TDM</u> court followed the test established in <u>Carrier</u>. <u>See</u> <u>TDM</u>, 83 Fed. Cl. at 785 n.4.

Plaintiff also urges the Court to follow the court in <u>Nextec Applications v. Brookwood Companies, Inc.</u>, 703 F. Supp. 2d 390 (S.D.N.Y. 2010), which applied the second clause, notwithstanding the fact that a government supply contract was at issue. <u>Nextec</u> is the only case that the parties cite, and of which the Court is aware, that involves both a supply contract and method patent claims. This renders <u>Nextec</u> highly analogous to the facts in this case. Importantly, however, as in <u>TDM</u>, the <u>Nextec</u> court did *not* determine the appropriate clause to apply in that case. Rather, the parties "agreed" that Clause 2 applied. <u>See</u> <u>id.</u> 703 F. Supp. 2d at 434 ("The parties agree—at least for purposes of this motion—that § 1498(a) provides that patent claims against government contractors or subcontractors must be brought in the United States Court of Federal Claims where use of the invention "necessarily results from compliance by the contractor or the subcontractor with (i) the specifications or written provisions forming a part of [the contractor or subcontractor's] contract with the United States."). In light of the fact that the parties stipulated to the second clause of FAR 52.227-1, the Court therefore declines to rely on <u>Nextec</u> here.

**CIVIL MINUTES – GENERAL**     'O'   JS-6

| Case No. | 5:18-cv-01798-CAS-SHKx | Date | March 26, 2019 |
|----------|------------------------|------|----------------|
| Title | SAINT-GOBAIN CERAMICS & PLASTICS, INC. VS. II-VI INC. ET AL. | | |

Chisum also supports the position that the first clause of FAR 52.227-1 applies in this case. With regard to the general "authorization and consent" requirement under § 1498, Chisum explains that, "[t]he impact of the 'authorization or consent' requirement varies depending on whether the infringement relates (1) to a product manufactured for actual delivery to the United States or (2) to a product, machine, or process used by a contractor or subcontractor doing work for the United States. In the first situation, the decisions generally hold that acceptance by the government of an accused product manufactured by a contractor or subcontractor brings the matter within Section 1498 even if the contract could be fulfilled with other noninfringing products." 5 Chisum on Patents § 16.06 (2019). In a footnote, Chisum more specifically addresses FAR 52.227-1, and it cites Robishaw Engineering, Inc. v. United States, 891 F. Supp. 1134 (E.D. Va. 1995), to explain the scope of the provision. 5 Chisum on Patents § 16.06, n.155 (2019). Per the Robishaw court, and as included in Chisum,

> [w]hen the contractor is supplying materials to the government, this clause, with one exception, provides that the government's authorization and consent occurs when the government accepts delivery under the contract. See 48 C.F.R. § 52.227-1(a)(1). The exception is that authorization and consent may occur prior to delivery if the contractor's use of the patent "necessarily results" from compliance with the government's written instructions . . . . In sum, unless infringement necessarily results from the government's written instructions, a patentee may only obtain relief against the government under § 1498 as soon as, but not before, the government accepts delivery of the allegedly infringing . . . item.

5 Chisum on Patents § 16.06, n.155 (2019) (quoting Robishaw Engineering, 891 F. Supp. at 1140). Chisum, and the authorities upon which it relies, accordingly do not determine the appropriate scope of FAR 52.227-1 based on whether the contract at issue is for a supply contract or a contract for services. However, they still conclude that if the government accepts delivery of infringing goods, this constitutes authorization and consent. Chisum does not distinguish between apparatus as opposed to methods patent claims. It also does not refer to Hughes on this issue.

Accordingly, for the foregoing reasons, the Court finds that the weight of authority supports defendants' position that the first clause of FAR 52.227-1 applies in this case, where a supply contract is at issue.

**CIVIL MINUTES – GENERAL**   **'O'**   **JS-6**

| Case No. | 5:18-cv-01798-CAS-SHKx | Date | March 26, 2019 |
|---|---|---|---|
| Title | SAINT-GOBAIN CERAMICS & PLASTICS, INC. VS. II-VI INC. ET AL. |

### ii.   The Legislative Purpose

The Court finds that the statutory purpose of § 1498 also supports defendants' position.  Section 1498 was enacted "to stimulate contractors to furnish what was needed for the [First World] War, without fear of becoming liable themselves for infringements to inventors or the owners or assignees of patents."  <u>Madey</u>, 413 F. Supp. 2d at 606 (quoting <u>Richmond Screw Anchor Co. v. United States</u>, 275 U.S. 331, 345 (1928)). Although the statute was first enacted in 1910, Congress broadened the statute in 1918 "at the behest of the Secretary of the Navy who cited difficulties in procuring goods from private manufacturers necessary to meet military requirements of World War I."  <u>TVI Energy</u>, 806 F.2d at 1060 (Fed. Cir. 1986) (citing H.R. 10858, 65th Cong., 2d Sess., 36 Cong. Rec. 7961 (1918)).  Courts generally agree that "the act of July 1, 1918, was intended to supply the inadequacies of the previous act, and give complete remedy against the United States, in order to prevent delays injurious to the government which necessarily follow the restraining of any person from carrying out a contract to furnish patented articles, devices, et al., manufactured for or to be used by or for the United States."  <u>Foundation Co. v. Underpinning & Foundation Co.</u>, 256 F. 374, 375–76 (1919); <u>see</u> <u>also</u> <u>Madey</u>, 413 F. Supp. 2d at 608 (citing <u>Carrier</u>, 534 F.2d at 249).  The Federal Circuit has expressly held that, "the coverage of § 1498 should be broad so as not to limit the Government's freedom in procurement by considerations of private patent infringement."  <u>TVI Energy</u>, 806 F.2d at 1060.

In a Report and Recommendation, a magistrate judge explained that the public policy behind § 1498 supports broadly interpreting FAR 52.227-1 to include all contracts for goods.  <u>St. Switch v. General Motors of Can.</u>, No. 95 C 0250, 1996 U.S. Dist. LEXIS 2762, *1 (N.D. Ill. March 7, 1996).[5]  In <u>St. Switch</u>, the magistrate judge was determining what authorization and consent standard should apply in a case where the defendant

---

[5]     A final order regarding the Report and Recommendation in <u>St. Switch</u> was never issued because the parties settled, and the case was dismissed.  <u>See</u> Dkt. 36-4, Ex. 3 ("N.D. Ill. Dkt.").

**CIVIL MINUTES – GENERAL**      **'O'**    **JS-6**

| Case No. | 5:18-cv-01798-CAS-SHKx | Date | March 26, 2019 |
|----------|------------------------|------|----------------|
| Title | SAINT-GOBAIN CERAMICS & PLASTICS, INC. VS. II-VI INC. ET AL. |

incorporated a patented product into another product that the defendant manufactured and sold to the government.  Id. at *3–4. [6]  The magistrate reasoned as follows:

> The Congressional purpose of § 1498 is best served by broadly interpreting the statute with respect to contracts for goods.  It would indeed be unusual for a government supply contract to specifically require that a contractor infringe a United States patent.  If courts were to apply [plaintiff's] proposed standard[, which is substantially similar to clause 2 of FAR 52.227-1], § 1498 would be relevant to only a tiny percentage of government supply contracts.  In the vast majority of cases, the government's supply contractor would remain unprotected and thus the Congressional purpose of § 1498 would remain unfulfilled.  While § 1498's application to service contracts may be more narrow, the government's interest in the statute's application in those cases is correspondingly weaker.  If the government vitally needs certain services, in most cases it may simply undertake to provide those services for itself; for example, in Carrier [Corporation, 534 F.2d 244 (Ct. Cl. 1976)], the Air Force could undertake to haul its own trash.  The required capital and expertise to engage in such an activity would be relatively small.  However, where the sale of goods is at issue, it would usually be a much more daunting task for the government to step into the shoes of the contractor.  For example, the government could not reasonably begin the manufacture of [light armored vehicles], due to the enormous outlays of capital and technical expertise required for such an undertaking.  The potential for harm due to the reluctance of contractors to provide such goods, particularly war materials, was central to the Congress that passed § 1498's 1918 amendments.  Thus the purpose of § 1498 dictates that its strongest protection should be extended to contractors who sell military goods to the government, the exact situation presented by this case.

Id. at 7–8.

The Court agrees with the reasoning of the magistrate judge in St. Switch.  The Federal Circuit's admonition that "the coverage of § 1498 should be broad so as not to

---

[6]     As in Carrier, 534 F.2d 244, the St. Switch magistrate judge does not expressly determine between the two clauses of FAR 52.227-1, but determines the applicability of two comparable authorization and consent standards.

**CIVIL MINUTES – GENERAL**   **'O'**   **JS-6**

| Case No. | 5:18-cv-01798-CAS-SHKx | Date | March 26, 2019 |
|----------|------------------------|------|----------------|
| Title | SAINT-GOBAIN CERAMICS & PLASTICS, INC. VS. II-VI INC. ET AL. |

limit the Government's freedom in procurement" supports defendants' position that the broader FAR 52.227-1 clause should apply in this procurement case. To restrict supply contracts by applying the narrower authorization and consent clause whenever patents with method claims are utilized in the execution of a supply contract, would strip § 1498 of its power to "prevent delays injurious to the government which necessarily follow the restraining of any person from carrying out a contract to furnish patented articles, devices, et al., manufactured for or to be used by or for the United States." Foundation Co, 256 F. at 375. That reasoning is particularly relevant here, where "the F-35 fighter project is critical to national security and may not be placed in jeopardy for any reason whatsoever." MTD at 1.

\*       \*       \*       \*       \*

In conclusion, the Court finds that the weight of authority, as well as the history and statutory purpose of § 1498, both support defendants' position that, for the purposes of this procurement contract, the government has authorized and consented to "any article the delivery of which [was] accepted by the Government under this contract." 48 C.F.R. § 52.227-1(1) (West). The parties do not dispute that defendants exclusively sold the sapphire sheets, in the form of the sapphire window applications, to Lockheed, who later sold the F-35 fighter jets to the United States Government. SUF ¶¶ 1–3. The Government accepted delivery of these goods—indicating its "authorization and consent" under the second clause of FAR 52.227-1. These sapphire window applications were also "for the government."[7] Accordingly, even assuming that defendants infringed

---

[7]     In its initial opposition to defendants' motion to dismiss, plaintiff argued that defendants' production of sapphire sheets and windows were not necessarily "for the government" because Lockheed may also provide F-35 fighter jets to foreign governments. OTD at 11–14. The parties now agree that Lockheed sells the F-35s that it manufactures with defendants' sapphire sheets directly to the United States government, but some of those jets are then sold "indirect[ly] to the foreign governments through the U.S. Government." DSUF ¶¶ 2–3; see also Rivera Decl. 85:01 – 85:07 (explaining that the U.S Government takes delivery of every F-35 before sending it to a foreign country). Although plaintiff does not repeat these arguments about foreign sales in its supplemental briefing, plaintiff asserts, in its statement of disputed facts, that "[t]here is no evidence in

CIVIL MINUTES – GENERAL     'O'    JS-6

| Case No. | 5:18-cv-01798-CAS-SHKx | Date | March 26, 2019 |
|---|---|---|---|
| Title | SAINT-GOBAIN CERAMICS & PLASTICS, INC. VS. II-VI INC. ET AL. |

plaintiff's method claims in producing these windows, for the foregoing reasons, the Court thus finds that these infringing uses are protected by § 1498.

## B.    Accused Uses for Research and Development

In addition to arguing that the government did not authorize and consent to defendants' patent infringement by accepting the sapphire windows, plaintiff also argues that defendant's initial research and development of a process to grow single crystal sapphire sheets are not covered by § 1498.  OSJ at 9.  Plaintiff argues that these uses were not for the government, and that the government did not authorize and consent to them. Id. at 9–10.

"A use is 'for the Government' if it is 'in furtherance and fulfillment of a stated Government policy' which serves the Government's interests and which is 'for the Government's benefit.'"  Madey, 413 F. Supp. 2d at 607 (citing Riles v. Amerada Hess Corp., 999 F.Supp. 938, 940 (S.D. Tex. 1998)).  "Incidental benefit to the government is insufficient, but it is not necessary for the Government to be the sole beneficiary."  IRIS Corp. v. Japan Airlines Corp., 769 F.3d 1359, 1362 (Fed. Cir. 2014) (quoting Advanced Software, 583 F.3d at 1378) (internal quotations omitted).  The Federal Circuit has

---

the record even addressing, much less establishing, that such sales that are not for use by the government are nonetheless 'for the government.'"  Id. ¶ 2.

To the extent that plaintiff therefore argues that the fighter jets that the U.S. Government sells to foreign nations are not "for the government," the law is clear that a contractor's immunization is not contingent on whether the infringing products are used by the United States Government, in the United States.  See Advanced Software Design Corp. v. Fed. Reserve Bank of St. Louis, 583 F.3d 1371, 1378 (Fed. Cir. 2009) (affirming the decision in Hughes, 534 F.2d at 898, where "the court found that the government's participation in the Skynet II satellite program was 'for the Government' although the satellites would be owned by the United Kingdom, because the program was vital to the military defense and security of the United States").  More generally, "[i]t is not necessary [for the government] to be the sole beneficiary . . . in order to be a beneficiary for the purposes of § 1498(a)."  Advanced Software, 583 F.3d at 1378 (citing Sevenson, 477 F.3d at 1365–66 (rejecting notion that § 1498(a) imposes a "primary purpose" condition)).

**CIVIL MINUTES – GENERAL**     **'O'**   **JS-6**

| Case No. | 5:18-cv-01798-CAS-SHKx | Date | March 26, 2019 |
|---|---|---|---|
| Title | SAINT-GOBAIN CERAMICS & PLASTICS, INC. VS. II-VI INC. ET AL. |

indicated that this prong is satisfied where "the use or manufacture of a patented method or apparatus occur pursuant to a contract with the government and for the benefit of the government." <u>Sevenson</u>, 477 F.3d at 1365. However, the government's benefit need not be the "primary purpose" of a government contract. See id. at 1365–66 (rejecting the notion that § 1498(a) only operates if "primary purpose" of contract is to benefit government).

Plaintiff contends that defendants required a period of upward of a year to research and develop the sapphire sheets before their initial sales to Lockheed,[8] and plaintiff contends that "there is no evidence that the government or Lockheed solicited II-VI to make large sapphire sheets." OSJ at 10. To the contrary, plaintiff argues that an employee from Lockheed, Rudy Rivera, suggested that defendants initiated conversations with Lockheed about using defendants' sapphire sheets only *after* defendants developed their process. <u>Id.</u> at 11; Dkt. 125-1, Ex. F ("Rivera Depo."). Specifically, Rivera testified that he was "not aware of" Lockheed asking defendant to grow its own sapphire sheets. <u>Id.</u> 24:7–24:14 ("So my understanding is there was II-VI, I believe, approached Lockheed Martin during that period of time and stated they could help with the [windows]"). This, plaintiff contends, demonstrates that defendant did not develop its sapphire production capabilities for the benefit of the government, and with the government's authorization and consent.

Defendants vigorously resist plaintiff's position that defendants are liable for research and development activities. First, defendants contend that plaintiff "points to no evidence of what sheets were actually grown [during the research and development time period], how they were grown, or whether they otherwise meet the claim limitations. Without any such evidence there is no basis to claim infringement." RSJ at 6.

---

[8]     Plaintiff relies on the sworn deposition taken of defendants' employee, Nathan Gregory Stoddard, who is an engineer for II-VI. See Dkt. 125-1, Ex. H ("Stoddard. Depo."). In that declaration, Stoddard does not expressly state that the defendants' research continued for over a year; however, Stoddard explains that defendants could not immediately begin producing sapphire sheets at the time defendants acquired the sapphire furnaces. Stoddard Depo. at 66:3 – 66:25 ("It's because the furnaces as delivered from Thermal Technologies were inadequate, and the process was – was not there."). Defendants do not expressly refute this fact, and viewing the evidence in the light most favorable to the non-moving party, the Court accepts plaintiff's version of the events.

**CIVIL MINUTES – GENERAL**     **'O'    JS-6**

| Case No. | 5:18-cv-01798-CAS-SHKx | Date | March 26, 2019 |
|----------|------------------------|------|----------------|
| Title | SAINT-GOBAIN CERAMICS & PLASTICS, INC. VS. II-VI INC. ET AL. |

Defendants add that, even if the development activities infringed the Sapphire Patents, this accused activity would still be protected by § 1498. Id. Defendants cite cases in which courts recognized a § 1498 defense to accused products that were manufactured for research and development purposes. MSJ at 14 (listing cases). Defendants further contend that Lockheed was "surely aware of those sheets" when it qualified defendants to grow sheets, in the 2014- 2015 timeframe. RSJ at 6. Defendants emphasize that their research activities were "related to fulfilling the same window panel contracts it already had with Lockheed." Id. at 6–7.

The Federal Circuit has applied the § 1498 affirmative defense to research and development activities. See TVI Energy, 806 F.2d at 1060. However, in TVI Energy, the Court applied § 1498 because defendant's testing activities were conducted in response to the Government's contract solicitation or request for bidding. Id. The Court explained that,

> [t]he significant point is that [defendant] was required to demonstrate the allegedly infringing targets as part of the Government's bidding procedure. Appellees' only purpose in demonstrating the targets was to comply with the Government's bidding requirements. In these circumstances, we can come to no other conclusion than that this demonstration fell within the scope of § 1498 as being "for the United States" and "with its approval."

Id.

Since TVI Energy, courts have repeatedly applied § 1498 to research and development activities, even when the accused activities were not in direct response to an active government bidding process. For example, in Astaris, LLC v. Fire-Trol Holdings, No. CIV 03-1468-PHX-ROS, LLC, 2006 U.S. Dist. LEXIS 384 (D. Az. 2006), the court ruled that a defendant was "protected under § 1498 from liability for patent infringement even during the time it develops and manufactures a small quantity of infringing product for testing when the product *is later subject to bidding* to supply the United States with the product." Id. at *21. Similarly, in BAE Sys. Info. & Elec. Sys. Integration Inc. v. Aeroflex Inc., No. CIV. 09-769-LPS, 2011 WL 3474344 (D. Del. Aug. 2, 2011), the Court "conclude[d] there is no requirement that conduct be undertaken pursuant to an existing contract or an ongoing bidding process" in order to fall within the protection of § 1498. Id. at *11. For this reason, the BAE Sys. court applied § 1498 to development activities after the government disclosed its interest in procuring infrared countermeasure

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   **'O'**   **JS-6**

| Case No. | 5:18-cv-01798-CAS-SHKx | Date | March 26, 2019 |
|----------|------------------------|------|----------------|
| Title | SAINT-GOBAIN CERAMICS & PLASTICS, INC. VS. II-VI INC. ET AL. |

defense technologies.  Id.  Finally, in Raymond Eng'g Inc. v. Miltope Corp., No. 85 CIV. 2685 (RWS), 1986 WL 488 (S.D.N.Y. May 23, 1986), the court applied § 1498 to the manufacturing of prototypes that a defendant was required to produce before the Government or its contractors would issue a purchase order.  Id. at 3.  Even without an express government bidding process or solicitation, the Raymond court applied § 1498 because developing prototypes was an expected and standard industry practice, and because it facilitated efficient contracting systems.  Id.

Plaintiffs argue that these cases are inapposite because, in those cases, the defendants developed products and technologies after the government expressed an interest in procuring those items—whether through a solicitation or bidding process.  OSJ at 12.  In contrast, plaintiff argues, "[h]ere, all evidence indicates that II-VI undertook its accused development activities without any solicitation—contractual or otherwise—by the government or Lockheed."  Id. at 13.  Emphasizing its argument that these defendants' research and development activities were not "for the government," plaintiff adds that, "[t]he evidence shows that II-VI undertook the accused development activities solely to eliminate its internal cost of purchasing large sapphire sheets from Saint-Gobain."  Id.

The Court finds that plaintiff overstates the differences in this case.  Moreover, while "[s]ection 1498 does not shield the manufacturer or seller of an infringing item simply because it eventually ends up in the hands of the United States Government," 5 Chisum on Patents § 16.06 (2019), that is not the circumstance here.  At the time defendants began researching a process to grow sapphire sheets, defendants knew that the government was procuring sapphire sheets because defendants were a component of the sapphire window supply chain.  Accordingly, while the record does not indicate that the government issued a formal solicitation or bidding process, the government had indicated, and defendants knew of, its interest in acquiring sapphire sheets.

Importantly, the same policy rationales that underscored the appropriateness of applying § 1498 in pre-bidding and solicitation contexts also apply here.  As the Raymond court reasoned, "[r]equiring a government contractor to receive a purchase order with the necessary authorization and consent clauses before even beginning the initial design and development work would impair the efficiency and quality of the current contracting system."  Raymond, 1986 WL 488, at *3.  The BAE Systems court added, "encouraging research and development to be used in government military operations was the most basic purpose of § 1498."  BAE Systems, 2011 WL 3474344, at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL     'O'    JS-6

| Case No. | 5:18-cv-01798-CAS-SHKx | Date | March 26, 2019 |
| --- | --- | --- | --- |
| Title | SAINT-GOBAIN CERAMICS & PLASTICS, INC. VS. II-VI INC. ET AL. | | |

*11. For § 1498 to achieve its intended goal, the Court thus finds that research and development activities are "for the government" when a party develops a process to manufacture products that it knows will benefit the government because the party is already under contract with the government in relation to that product.

These circumstances are met here. At oral argument, defendants stressed that they researched and developed a process to grow sapphire sheets for the government, and that all of their research activities were related to fulfilling the same window panel contracts they had already executed with Lockheed. RSJ at 7. Illustrative of defendants' stated purpose, defendants sold their sapphire sheets exclusively to the United States Government, through Lockheed, once defendants solidified their manufacturing process. It is of no consequence that defendants also stood to benefit financially from developing the capability to grow sapphire sheets. It bears repeating that, for a use to be "for the government," "[i]t is not necessary [for the government] to be the sole beneficiary . . . in order to be a beneficiary for the purposes of § 1498(a)." Advanced Software, 583 F.3d at 1378.

The Court also finds that defendants undertook these accused activities with the implied "authorization and consent" of the government. As the court in TVI Energy held when it applied § 1498 to accused activities arising out of a government bidding process, "[i]n proper circumstances, Government authorization can be implied." TVI Energy, 806 F.2d at 1060. Here, where the Government, through Lockheed, later authorized and consented to defendants' infringing activities by including FAR 52.227-1 in defendants' procurement contracts, the Court finds that the Government impliedly authorized and consented to the pre-contractual development activities, as well. See BAE Sys. Info., 2011 WL 3474344, at *15 (finding that the Government's eventual authorization and consent to infringing activities "extend back to the initial allegedly infringing activities, which included testing the [infringing products]" where these "activities resulted in being awarded" a prime contract).

Accordingly, for the foregoing reasons, the Court finds that § 1498 protects defendants' research and development activities.

**CIVIL MINUTES – GENERAL**   **'O'**   **JS-6**

| Case No. | 5:18-cv-01798-CAS-SHKx | Date | March 26, 2019 |
| Title | SAINT-GOBAIN CERAMICS & PLASTICS, INC. VS. II-VI INC. ET AL. |

### C.   Accused Uses for Marketing Activities

Plaintiff also argues that defendants have not carried their burden in proving that all accused uses were "for the government" with its authorization and consent because defendants have allegedly infringed plaintiff's patents by growing large sapphire sheets for marketing purposes.  OSJ at 13 (citing <u>Neff Instrument Corp. v. Cohu Elecs., Inc.</u>, 269 F.2d 668, 673 (9th Cir. 1959) ("The mere manufacture of a patented article, without sale, is sufficient to create an infringement.")).  Plaintiff provides photographs of defendants' display case at a 2016 industry conference.  <u>See</u> Dkt. 125-1, Exs. I & J. There, defendants allegedly featured large sapphire sheets.  Plaintiff contends that defendants also market their ability to produce large sapphire sheets on defendants' website, and plaintiff produces screenshots of this marketing material.  OSJ at 14; <u>see</u> Dkt. 125-1, Ex. D.  Based on the deposition of Sandra Lucero, an employee of defendants, plaintiff further suggests that defendants commonly market the sapphire sheets.  <u>Id.</u>  In her sworn deposition, Lucero testified that it "wouldn't surprise [her]" if defendants displayed sapphire sheets at other conferences, nor if they marketed their ability to manufacture sapphire sheets to potential customers.  Dkt. 125-1, Ex. G, Deposition of Sandra Lucero ("Lucero Depo.") at 79:09 – 79:17, 82:1 – 82:25.

Defendants contest this allegation.  They respond that "a photo of a single sheet purportedly taken at a tradeshow and sheets promoted on II-VI's website" does not constitute a credible allegation of infringement.  RSJ at 7.  Defendants add that "none of the webpages cited by SG include any size or manufacturing process, all limitations of the asserted claims."  <u>Id.</u>  To this effect, defendants contend that they need not establish a defense to these allegations of infringement, because plaintiff fails to establish credible claims.  <u>Id.</u>

The Court has reviewed the photographs of the accused marketing activities, and it has reviewed the transcripts supplied by the parties.  On this record, the Court is uncertain as to whether infringement on this basis occurred.  The Sapphire Patents cover sapphire sheets of specific sizes that are grown through specific methods.  As defendants argue, the record does not clearly establish the size of the sapphire sheets pictured.  The method by which the sheets are grown is also unknown.  At oral argument, the parties conceded that sapphire panels could be produced by alternative methods.  Accordingly, the sheer existence of a sapphire sheet of unknown size would not necessarily indicate that infringement of plaintiff's Sapphire Patents occurred.  The Court also notes that

**CIVIL MINUTES – GENERAL**     **'O'**   **JS-6**

| Case No. | 5:18-cv-01798-CAS-SHKx | Date | March 26, 2019 |
| --- | --- | --- | --- |
| Title | SAINT-GOBAIN CERAMICS & PLASTICS, INC. VS. II-VI INC. ET AL. |

Lucero did not testify that defendants necessarily demonstrate their sapphire sheets to customers, but rather, their technical capabilities.  <u>See</u> Lucero Depo. 81:20 – 82:22.[9]

However, on this motion for summary judgment, the Court views the facts in the light most favorable to plaintiff, the non-moving party, and the Court assumes, for the purposes of this motion, that defendants produced infringing single crystal sapphire sheets for the industry trade show and to be photographed for plaintiff's website.  Notwithstanding this assumption, the Court finds these accused uses to be sufficiently *de minimis*, such that the Court may dismiss this entire action, pursuant to § 1498.

As <u>Chisum</u> explains, "[i]f the defendant makes, uses, or sells an invention for both the United States and others, a district court may adjudicate a claim of infringement as to the latter.  If the defendant's nongovernmental activity is sufficiently limited, the court may dismiss the whole action on the principle of *de minimis non curat lex* ('the law does not concern itself about trifles')."  5 <u>Chisum on Patents</u> § 16.06 (2019).

Multiple courts have found trivial, non-governmental infringement to constitute *de minimis* infringement do not bar dismissal, pursuant to a § 1498 defense.  For example, in <u>Raymond Engineering</u>, the defendant displayed an infringing product at two trade shows pertaining to military hardware, which were open to the public and attended by representatives of foreign countries.  <u>Raymond</u>, 1986 WL 488, at *5.  Finding that the defendant had no discussions about sales of the infringing product, however, the <u>Raymond Engineering</u> court concluded that "it is appropriate to grant [defendant's] motion to dismiss the complaint for failure to assert claims involving non-governmental sales of the [infringing product] of more than a *de minimis* nature."  <u>Id.</u>  The court added

---

[9]     Lucero specifically testified as follows: "[I]n a normal course of business, companies frequently market themselves using all of the knowledge and capabilities they have regardless of whether or not they intend to sell it or whether or not they think the customer is even in the market to buy it because the intent of showing all of your capabilities is to demonstrate not just what you do, but that you have a willingness to invest and/or develop to support different markets, different customer needs, different government needs. It's – It's like somebody who sells pools might advertise that they can do some sort of extra thing to a pool knowing that nobody will ever buy it, but it shows they have the capability."  Lucero Depo. 82:10 – 82:22

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'    JS-6**

| Case No. | 5:18-cv-01798-CAS-SHKx | Date | March 26, 2019 |
|----------|------------------------|------|----------------|
| Title | SAINT-GOBAIN CERAMICS & PLASTICS, INC. VS. II-VI INC. ET AL. | | |

that, should plaintiff later develop evidence of non-governmental sales, it could reopen the action. Id. Similarly, in Hutchinson Indus. Inc. v. Accuride Corp., No. CIV.A.09-1489FLW, 2010 WL 1379720 (D.N.J. Mar. 30, 2010), the court concluded that a defendant's responses to non-government "requests for quotes," did not negate a § 1498 defense. "Defendant has represented to the Court in its papers and at oral argument that Defendant has not, and will not, bid on or supply any of the allegedly infringing wheels to any party other than the Government, its contractor, or a potential contractor submitting a bid on a Government contract." Id. at *5 n.12. This forward-looking promise overcame the past insubstantial, non-governmental activity. Id.; see also BAE Sys. Info., 2011 WL 3474344, at *12 ("Where no sales have occurred, speculation about future non-U.S. government sales are just that: speculation.").

Other courts have expressed some reticence in applying the *de minimis* principle in the context of § 1498. See, e.g., Neff Instrument Corp. v. Cohu Elecs., Inc., 269 F.2d 668, 673 (9th Cir. 1959) ("[W]e cannot look with favor on a lax application of the de minimis rule."). However, these decisions have always arisen in the context of actual non-governmental *sales*. See Neff Instrument, 269 F.2d at 673 (declining to find that non-governmental uses were *de minimis* where close to 25 % of accused uses were either sold to non-governmental customers or offered for sale); Systron-Donner Corp. v. Palomar Scientific Corp., 239 F. Supp. 148, 152, 145 USPQ 56, 60 (N.D. Cal. 1965) (declining to apply the *de minimis* rule where nongovernment sales represented 0.198% of total sales); Northill Co. v. Danforth, 51 F. Supp. 928, 929, 58 USPQ 575 (N.D. Cal. 1942), aff'd, 142 F.2d 51, 61 USPQ 206 (9th Cir. 1944) (no *de minimis* exception where 0.59% of sales were to civilians); J. & G. Development Company v. All-Tronics, Inc., 198 F. Supp. 392 (E.D.N.Y. 1961) (submitting to the jury whether a single non-governmental sale constituted a *de minimis* infringement for the purposes of § 1498).

The instant case is clearly distinguishable from the circumstances wherein courts declined to find that the *de minimis* principle applied. In this case, there have been no non-governmental sales. Accordingly, this case is most analogous to Raymond Engineering, where the Court applied the *de minimis* exception to infringing uses in the context of marketing, Raymond, 1986 WL 488, *5, and to Hutchinson, where the court found that a past solicitation did not bar a § 1498 defense, Hutchinson, 2010 WL 1379720, at *5. Defendants represent that all of the infringing sheets that they manufacture are sold to Lockheed, for use by the U.S. Government, and defendants have expressed "no intention to sell the article in question to non-governmental buyers, and

**CIVIL MINUTES – GENERAL**   **'O'**   **JS-6**

| Case No. | 5:18-cv-01798-CAS-SHKx | Date | March 26, 2019 |
|----------|------------------------|------|----------------|
| Title | SAINT-GOBAIN CERAMICS & PLASTICS, INC. VS. II-VI INC. ET AL. | | |

that [they have] not sought such sales." J. & G. Dev. Co., 198 F. Supp. at 395. For these reasons, the Court finds that defendants' accused marketing activities—to the extent that they constitute infringement—are sufficiently *de minimis* as to permit the Court to dismiss this entire action under § 1498. Should plaintiff discover additional non-governmental uses in the future, plaintiff may move to reopen this dismissal.

In sum, the Court finds that defendants' manufacturing of the single crystal sapphire sheets which were utilized in fighter jets acquired by the United States Government were "for the government" with Government's "authorization or consent," pursuant to 28 U.S.C. § 1498. Section 1498 also protects the research and development activities that defendants undertook in order to develop a process by which they could develop those sheets. Additionally, the Court finds that the accused marketing activities are sufficiently *de minimis* as to permit this Court to dismiss this entire action. The Court therefore **GRANTS** defendants' motion for summary judgment. Accordingly, defendants are immune from suit in this Court.

## V.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** defendants' motion for summary judgment.

IT IS SO ORDERED.

| | 00 | 00 |
|---|----|----|
| Initials of Preparer | | CMJ |